UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

JEFFREY L. ROWE, )
)
          Plaintiff, )
  vs. ) 1:06-cv-1361-DFH-JMS
)
WISHARD HOSPITAL, )
)
          Defendant. )

**Entry Discussing Motions for Summary Judgment**

For the reasons explained in this Entry, the motion for summary judgment of plaintiff Jeffrey L. Rowe ("Rowe") (dkt 39) is **denied,** while the amended motion for summary judgment of defendant Wishard Hospital ("Wishard") (dkt 29) is **granted.**

**I. Summary Judgment Standard**

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[1] A "material fact" is one that "might affect the outcome of the suit."[2] A dispute is genuine only if a reasonable jury could find for the non-moving party.[3]

The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."[4] The means by which this purpose is accomplished is by "pierc[ing] the pleadings and . . . assess[ing] the proof in order to see whether there is a genuine need for trial."[5]

At bottom, the district court must determine whether the party opposing the

---

[1] *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*).

[2] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly.[6]

Succinctly stated, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial."[7]

"'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'"[8] "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion."[9]

As noted here, each side seeks resolution of the matter through the entry of summary judgment. On cross-motions for summary judgment, the court construes facts and draws inferences "in favor of the party against whom the motion under consideration is made."[10]

## II. Rowe's Motion for Summary Judgment

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[11] "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."[12]

In this case, Rowe has failed to meet his burden as to his claim. His failure consists of having failed to submit evidentiary materials in support of his recitation of the pertinent facts. He has neither submitted nor designated such supporting materials, leaving his

---

[6] *Thompson Everett, inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir. 1995).

[7] *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998).

[8] *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999)(quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

[9] *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

[10] *In re United Air Lines, Inc.,* 453 F.3d 463, 468 (7th Cir. 2006) (citation omitted).

[11] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[12] *Id.* at 325.

narrative statement insufficient to support a finding as to the factual account he provides.[13] In addition, for the reasons explained in Part III of this Entry, Rowe's narrative account does not, apart from the evidentiary deficiencies, support a conclusion as a matter of law that Wishard could be liable to him. Rowe's motion for summary judgment (dkt 39), therefore, is **denied.**

### III.  Wishard's Motion for Summary Judgment

#### A.  Background

Wishard's motion for summary judgment is based on certain evidentiary materials and those materials, construed in the fashion most favorable to Rowe as the non-movant, show the following: On September 6, 2006, Rowe arrived at Wishard's Crisis Center, where he was a patient. He sought to learn the status of his counselor, Jeanne DeLisle. Beverly Banks, who was working at the front desk, requested that Rowe fill out the necessary paperwork, including a consent to treatment. Rowe refused to sign any paperwork and demanded to speak to a supervisor.

The Office Manager, Michael Hughes, came to the front of the Crisis Center and requested that Rowe accompany him to an interview room so they could talk privately. Hughes did not want other patients to become frightened or agitated because of Rowe's behavior. Rowe accompanied Hughes as requested and the two sat down in an interview room.  During this interview Rowe continued to demand information about his counselor and Wishard administrators.  Rowe admitted to having auditory hallucinations but would not provide details and he refused to fill out assessment paperwork or agree to speak to a psychiatrist about medications.  Rowe continued to be loud and belligerent in his demeanor, and at one point Rowe stood up and leaned over Hughes in such a manner that Hughes believed Rowe was going to hit or harm Hughes, causing Hughes to fear for his safety and that of others in the Crisis Center. Hughes then called for Wishard Security so Rowe could be placed in detention and escorted to the psychiatric emergency room. This is precisely what occurred, following which Rowe was admitted, kept in the psychiatric emergency room, and released after approximately six (6) hours of observation.

#### B.  Discussion

Rowe's claim is asserted pursuant to 42 U.S.C. § 1983. The court has subject matter jurisdiction over the claim pursuant to 28 U.S.C. §§ 1331 and 1343(3). "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred."[14] Accordingly, "the first step in any [§ 1983] claim is to identify the

---

[13] "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003) (citing cases). There is no reason to stray from the traditional remedy in this case.

[14] *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

specific constitutional right infringed."[15] The parties are in agreement that Rowe's allegations implicate the guarantee of the Fourth Amendment to be free from unreasonable searches and seizures.

The pivotal feature of Wishard's motion for summary judgment is that Wishard is a municipal entity.[16] Municipalities are "persons" subject to suit under § 1983, but liability may be imposed only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ."[17] The "official policy" requirement for liability under § 1983 is to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[18] "Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers.'"[19] A municipality's policy may be the source of a civil rights violation in one of three ways:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) `a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with `final policymaking authority.'"[20]

Here, Rowe does not contend that Wishard had a policy of unlawfully detaining patients in violation of the Constitution. Rowe has not alleged that such an express policy existed, nor is it possible to infer there was such a policy at work. In cases asserting an implicit policy or a gap in express policy, "what is needed is evidence that there is a true municipal policy at issue, not a random event."[21]

---

[15] *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

[16] Wishard Hospital is operated by the Hospital Division of the Health and Hospital Corporation of Marion County, and is a municipal corporation established by the Indiana Legislature in 1954, to provide public health services and facilities to the residents of Marion County, Indiana, as well as medical care for the indigent. *Ekanem v. Health & Hosp. Corp. of Marion County, Indiana*, 1980 WL 273 at *4 (S.D.Ind. November 28, 1980).

[17] *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978).

[18] *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

[19] *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint,* 482 F.3d 897, 904 (7th Cir. 2007)).

[20] *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 734-35 (7th Cir. 1994) (citations omitted).

[21] *Phelan v. Cook County,* 463 F.3d 773, 790 (7th Cir. 2006) (quoting *Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005)).

Wishard admits that Rowe was detained pursuant to a policy, but Rowe does not challenge the validity of either Wishard's specific policy or of Indiana's Immediate Detention Statute, IND. CODE § 12-26-4-1. What remains, therefore, is evidence of a single event which arguably constituted the treatment of Rowe in violation of the Fourth Amendment. Even if it were shown that Wishard personnel acted improperly, the Supreme Court has held that a single incident cannot by itself support an inference of a customary practice sufficient to justify municipal liability under § 1983.[22] Nor has Rowe argued that the Wishard personnel he encountered on September 6, 2006, held final policymaking authority with respect to such policies.[23]

Because the evidentiary record does not support the existence of a direct, causal link between Rowe's detention and a policy or custom of Wishard, only individual capacity liability would be possible.[24] However, no individual liability claim has been asserted in this case.

### IV. Conclusion

Wishard's motion for summary judgment is **granted.** Rowe's motion for summary judgment is **denied.**

Judgment consistent with this Entry shall now issue.

So ordered.

DAVID F. HAMILTON, Chief Judge
United States District Court

Date: 3/21/2008

---

[22] *Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)("where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation").

[23] *Killinger v. Johnson,* 389 F.3d 765, 771-72 (7th Cir. 2004). "[W]hether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988). "[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *McMillian v. Monroe County, Ala.,* 117 S. Ct. 1734, 1737 (1997). A court may not assume that final policymaking authority lies in some entity other than that in which state law places it. *Praprotnik,* 485 U.S. at 126.

[24] *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 517 (7th Cir. 2007).